All right, our final case this morning is 20-4131 United States v. Frazier. And Mr. Ricci, you're for the appellant. You may proceed. Good morning, Your Honors. John R. Ceci from the Federal Defender's Office in Denver for Appellant Antwon Frazier. Your Honors, the sole remaining issue in this case is one of reasonable suspicion. Specifically, whether Trooper Gibbs had reasonable suspicion to immediately detour from the mission of the traffic stop for nearly three minutes to try to locate a drug dog. He definitively did not, and the factors on which the district court and government rely here are far weaker, both individually and in totality, than in many of this court's cases. Differences that the government elides over but which are fatal to their position. Now, we've exhaustively chronicled these factors in the briefing and I don't want to repeat myself here. What I do want to do is make a few important points. First, that some of these factors are simply individually innocuous and contribute nothing to the overall calculus. Second, in totality, the factors fall far short of those that were present in cases in which this court has found reasonable suspicion to be lacking or to be a close case. And third, that is all you need to decide to decide this case because the government does not defend this three minute delay as anything other than an impermissible investigatory detour violative of Rodriguez, if taken in the absence of reasonable suspicion. So, to start, a lot of these factors are simply so individually innocuous as to contribute nothing that they should be discarded entirely. This includes the presence of a duffel bag that the government has disavowed any reliance on appeal, driving a rental car in an interstate. It also includes having the mere presence of an air freshener and the window not being opened down all the way. Let's start with your first one with respect to the duffel bag. Didn't the troopers specifically say, yes, lots of times it's perfectly innocuous, but there are other times where they use duffel bags to bring drugs in. So can't you count that, sort of? No, I don't think you can count it at all and I think it's telling that the government doesn't even defend that. He testified that he had found drugs in duffel bags before and he found clothes in duffel bags, right? Having luggage while traveling is not indicative of criminality, it's indicative of travel. And in this court's cases in which luggage has been found to be suspicious, it's because there's been something odd about the nature of the character of that luggage or about its inconsistency with the purported travel plans. None of that was present here. So I think you do have to discount that entirely. It is completely indistinguishable from anything that any other traveler on an interstate may have. With respect to the air freshener and the lowered window, I think those need to be completely disregarded as well. The reason is that Trooper Gibbs' theory of suspicion was that Mr. Fraser was trying to hide the odor of contraband with air freshener. But the suspicion was entirely undermined by the fact that he smelled neither, neither air freshener nor drugs, despite the window being open, despite him leaning in, despite him reaching into the interior of the vehicle to inspect documents and inspect a ginger beer bottle. So just as reasonable suspicion can develop during a stop, so too can it dissipate. And that's what happened here. So by the time Trooper Gibbs... Why wouldn't his refusal or his unwillingness to roll the window down more actually provide some indication in addition to the air freshener that he was afraid about an odor being detected? Because I think there are a number of reasons why a person wouldn't roll down a window, as this court recognized in Ludlow. There may be facts that are present, such as temperature, concerns about personal safety that well may be present that would prevent someone from rolling it down. I also think it's an exceedingly odd thing to suggest that doing something that both police departments and civil rights groups affirmatively recommend drivers to do, that is not lower their window down all the way if they have concerns about interacting with an officer, is somehow indicative of suspicion of criminal activity. Moreover, he did comply with Trooper Gibbs' request to roll the window down further. And then the two men engaged in the rest of the stop without any problem. Trooper Gibbs never indicated he had any problem with communication or confusion. And again, he was close enough to him to reach. The trooper didn't say, hey, you got to roll it down further. I mean, and then he declined. I mean, the trooper indicated that the window was adequate as it was rolled down. I mean, he didn't say it was adequate, but he didn't challenge it or ask for a further roll down. He didn't ask him to roll down further. And you can watch, you know, I encourage you to watch the video. They interact freely. And the image we included in our brief shows that how far down the window open was. You could reach inside to get documents and even a bottle of ginger beer. So I really think that that adds absolutely nothing. And really, the cases the government cites on that point are just completely different. Right. They can deal with people rolling up the window and refusing to engage with officers, acts of defiance, not acts of compliance that are present here. So I think we take that out altogether. You know, I think the really the only factor I think that has any legs in this case is that of evasiveness. And that doesn't walk very far either. I couldn't hear what you said. What is this idea of evasiveness? That is that Mr. Mr. Frazier's very brief pauses before answering two questions. And I think the video, again, it speaks for itself. We are talking about exceedingly minimal response times, both times at which Mr. Frazier is looking at his phone. And anyone who's ever interacted with someone engrossed in their cell phone, I think, you know, can understand that there's sometimes a moment of delay before someone responds. So that is a pretty stark contrast to those cases in which this court has found evasiveness to be present and probative of reasonable suspicion. Looking at this recent decision in Cortez with repeated evasiveness of who they were traveling with, not refusing to answer questions about that. Williams repeated acts of evasiveness, claiming memory loss because he was 39 years old. And, you know, very odd situations. But but even crediting, you know, that to a minimal extent that that trooper Gibbs found these these responses to be noticeable and evasive. This court has credited far more severe acts of evasion in a very minimal way. Right. It said that that acts of evasion are contribute very little to the to the reasonable suspicion analysis overall. But the evasion here is different from nervousness, because I guess that the trooper is not they're not relying on a nervous behavior like we sometimes see is. Is that correct. That's correct. There's no no suggestions by trooper Gibbs that there was anything on the nervousness. And this court's also rejected the idea that near sort of the regular modicum of nervousness attended in a traffic stop is probative of reasonable suspicion. It only credits nervousness if it's extreme or extraordinary. No suggestion of that here at all. I do want to say to that on that this idea of evasion. One thing that absolutely cannot factor into the equation is Mr. Mr. Frazier's response, asking trooper Gibbs why he's inquiring about his what he did in Los Angeles with his sister essentially what asking a question seemingly unrelated to the purpose of this very minor traffic violations that he was purported to be pulled over for and this court and the Supreme Court have been very clear, right, that a. There's no obligation to answer those questions as trooper Gibbs acknowledged and that a person's failure to consent or to subjugate themselves to an officer sort of assertion of a discretionary authority simply cannot be probative of reasonable suspicion because that would eviscerate the Fourth Amendment protections. So that has to be taken out of the equation as well. So I think you know at most you can credit a little bit of this this sort of the minor pause. I don't think that really it adds anything, but I'll give a little ground on on giving a little bit of weight to that but like I said, this court has given exceedingly little weight to far more extraordinary instances of evasion, so it doesn't add much to the equation. Can we look at the, at the total time of 20 minutes as being reasonable and deciding that whether this length of this stop was reasonable mean 20 minutes is within the time of a lot of cases where it's been held. Not overly long attention. I don't disagree with that but it absolutely is not a factor here and Rodriguez makes that clear, right, just because some stops that occur 20 minutes or constitutional doesn't mean that every stop that takes less time is constitutional justice because some stops take eight minutes doesn't mean that every stop that takes longer is per se unconstitutional Rodriguez tells us that when evaluating the reason the loss of the traffic stop, we have to look at what occurred during that traffic stop at the time it takes is reasonable for any particular traffic stop to to be reasonable is what occurred in that case, and the lodestar of that is whether or not an officer engaged with reasonable diligence. It's the antithesis of reasonable diligence to engage in repeated investigatory detours that are unsupported by reasonable suspicion. That's why this case is actually quite easy I think under Rodriguez, it's pretty straightforward of application of that case. And the trooper did precisely the thing that Rodriguez forecloses, which is called a drug dog to investigate suspicion of drug trafficking, without having the requisite reasonable suspicion to do so. I want to say is I did to me this is the maybe the most important issue in the case, whether if you did this the officer have to make no mistakes in terms of delay. Or do you look at the holistic picture I mean a person being stopped, I think it typically is going to look at his Washington say, I need to get back on my road how long is this taking me not is it taking you too long to write the ticket is it taking you too long to get out of the car to come over to me is it taking you too long to do this that or the other thing and we're going to look at each of these things and if I find one gotcha, you're out of here. So to me that is the, and maybe Rodriguez decides that for us. I don't know, but, but I'd like anything further you had to say about that just because like just Seymour's question to me that's me that's kind of a big issue. Sure, to response. I think Rodriguez does answer this in large measure by establishing a bright line rule right that that de minimis delays that involve criminal investigation that is unsupported by reasonable suspicion are violated the Fourth Amendment full It also tells police officers very clearly what they can do right the tasks ordinarily incident to a traffic stop and related concerns of officer safety, those are well established in the cases and there really shouldn't be any question as to what is and is not permissible with respect to how long it's not takes Rodriguez tells us that as well. It takes as long as is reasonably necessary to complete the mission of the stop right and anything that adds to that that is improper is is violated the Fourth Amendment. So whether it doesn't make a difference that dispatch and called back by the time the dog showed up. So, that would extend the time even longer, wouldn't it make it reasonable. Yeah, so it doesn't in this case, it may matter in another case in the future, it doesn't in this case for a couple of reasons. You know, certainly there are cases in which the order of operations may be the important that's not our challenge. That being said, it's hard to imagine a less efficient order of operations and that which was conducted here but that's not what we're arguing. So crediting that trooper Gibbs was able to wait seven minutes to call dispatch and do the thing that took another seven to eight minutes to do even crediting that doesn't answer the question here, because a stop should have ended three minutes earlier because the three minutes before the beginning of the stop never should have happened. And that would have been before the dog, but assuming that he hadn't called those three minutes, dispatch the call to dispatch extended the time that extended more than the three minutes that was lost there. It extended it beyond that, but without those three minutes, the stop should have ended prior to the dog sniff. Even so, I don't think that the delay of of the dispatch delay makes any factual difference in this case. I also don't think it's the right way. He legitimately could wait for the dispatch to get back to it. Right. Absolutely. No, if we look at the total time that took and subtract the three minutes. Isn't that within the 20 minutes. The total time. Sure, but we're not looking at 20 minutes being some sort of magic number of per se reasonableness that Rodriguez affirmatively forecloses that it's the amount of time that is reasonably necessary to effectuate the stop right and the stop would have been done testified pages 191 and 92 of the record that once the sniff was done he would have gone to the car if there hadn't found anything right the stop would have been done earlier. And it was not because trooper gives took three minutes to try to find a drug book. We seem to have lost Jersey Bell I don't. It's another call but there's some other things going on here but I'm deferring all of those and I have doing my very best to have full attention here. I didn't want to didn't want to didn't want to go forward without without the last point I just want to make is to look when you're looking at the totality of the circumstances to compare this case to to a couple of cases of this court, particularly Lopez in wood, which are cited in the briefs, in which the factors there are far more egregious than what are present here in this court fund reasonable suspicion to be lacking, as well as Simpson and Cortez, in which in which case this court found sufficient to be present, but considered a close cases with far more than is present here. I'd like to reserve the remaining of my time. All right. Oh, I'll ask the, the other side. All right, thank you counsel let's hear from Mr. Jack. Hey please the court. Nathan jack the United States. The, the, the, just the factual question was dispatch notified. During the, the, the four minutes or so. Before the dog search was was requested, or so was that time while you while they were waiting for the dispatch was dispatch, not notified or ask until after that. It came after the request for the, for the dog. Okay, so if so, so they never and that was my understanding, it was a little bit confusing from the questions and answers before. So, the dispatch time didn't even begin until after we had the request for the dog time incurred. That's correct. Thank you. So there's been various talk about the factors, but I think it's important that we look at these facts through the lens of trooper Gibbs training and experience and we do that for two reasons. First, as this court is well aware on this appeal, it views the evidence and the light most favorable to the government. And second courts defer to officers training experience to distinguish between innocent and suspicious activity. Here, we have a driver who appeared to be attempting to hide odors, either from an officer, or from a canine driving a rental car, halfway across the country to exist in city, consistent with the drug couriers mo is this court recognized Mercado, The driver seems to be making up or evading answers to basic questions about his travel plans. He is unable to produce a rental agreement for the car, and he has multiple state IDs in this wallet. These are the facts that trooper Gibbs faces he walked back to his, his patrol car. Based on this initial interaction, he believed that Mr. Fraser may be trafficking drugs. That belief is reasonable. And it's based on objective facts, based on his training and experience and that's enough for reasonable suspicion. Reasonable suspicion does not require certainty. It doesn't even require a fair probability, all it asks for is a minimum level of objective justification to believe the criminal activity, maybe a foot. So it doesn't matter whether we can. You agree that Rodriguez would prevent us from looking at the, after the information acquired after that the, the DS Lee images and diesel search. Yeah. Doesn't Rodriguez really prevent us from looking at those. It doesn't even if we assume there's a Fourth Amendment violation by calling for the canine unit that doesn't vitiate the stop entirely. The remedy for Fourth Amendment violation is that the evidence obtained as a result of that violation is suppressed. So if evidence is not the product of illegal government activity, then it's still admissible. So, consent, for example, can cure Fourth Amendment violation, as can an independent source of the evidence. Mr Frazier does not argue that the diesel search was a result of prolonging the stop from calling for a canine unit. His argument is, and has to be that the diesel search itself prolonged the stop. And that's squarely contradicted by the district courts unchallenged factual findings that that search happened while trooper Gibbs was waiting for dispatch to respond to this request. So this court can, even if it concludes that there was an improper delay, it can still consider the diesel search. And it's reasonable. I mean, it's got some force to it. But because, as you're saying, the diesel search was unrelated to anything learned from the search itself. But would the officer, is there evidence that possibly the officer would not have gotten to a diesel search? He would have been released and on the way down the road before the diesel search ever could have occurred if there hadn't been these earlier delays. There's no evidence of that. If we take out calling the canine stop, Trooper Gibbs, he still had suspicion at that time. So that's why he called the canine in the first place. And that's also what led him to do the diesel search. He filled out the citation. He called in to dispatch for the records request. And while he was waiting for a response from dispatch on that records request, he conducted the diesel search. That's an independent basis that's unrelated. And again, Mr. Frazier makes no argument. In his reply brief, in fact, he clearly distinguishes it as a result of prolonging from the canine request. And so this court can consider. And once you add that factor into the analysis, this case looks a lot like other cases in which this court has found reasonable suspicion. Consider Contreras, for example, which this court found painted a convincing picture of reasonable suspicion. The most important factor there was that the driver traveled 1,200 miles from Nebraska to Las Vegas to see her family for a day, only to turn around and travel back. That's what we have here. We have a trip halfway across the country to spend a day, maybe two at most, in Los Angeles to return home. On top of that, you have attempting to evade attempting to hide odors, not just from from officers, but also from canines. So the fact that that doesn't state the evidence correctly, because there wasn't any indication he attempted to hide. There was no evidence that he used the spray. He just had it. So until you find evidence that he used it, you can't say he attempted to hide odors. Other circuits disagree. There have been multiple circuits that have found that the presence alone of an air freshener, a can of spray deodorizer, which is what we have here, contributed to reasonable suspicion. And again, and again, I think we have a defendant have an explanation for the lack of a rental agreement. I don't believe he ever offered an explanation on why he can produce it. It was a long term rental, but he didn't say that's the reason why he didn't have it. And again, as trooper as trooper Gibbs is heading back to his patrol car, he has a driver with a rental that can't produce a rental agreement. And when you combine it with all these other factors with rolling down the window only a few inches with having a can of spray deodorizer with the hesitation and the evasiveness to basic questions, you know, where, where are you going? Where are you coming from? How long were you there? This all adds up to seem like Mr. Frazier may be engaged in drug trafficking. And. Mr. Frazier raises the issue of of rolling down the window and says we can dismiss that as as completely innocuous, but that's not what this court found in Ludlow. In Ludlow, it found resubmission based in part on the mere fact that he rolled down the window a few inches. There was no evidence that the officer smelled anything. There wasn't even evidence that there was an air freshener or can of spray deodorizer in the car, which is what we have here. A few inches, and I did see the picture was attached to the briefs. This window is close to halfway down. I mean, I think that gives rise to a very different kind of an inference than a window that's only a few inches down. The I believe the district court's factual findings are that it was three to four inches at first, and then an additional inch after that, after Trooper Gibbs requested that he rolled down the window. Well, we have the photo and that or the physical evidence always trumps anything else. And the photo clearly shows it was maybe not halfway down, but at least a full third of the way down. I mean, easy enough to get ahead. You know, it was it wasn't there's any orders in the car. It was plenty open for orders to dissipate. So even if there's video and footage, this court still defers to the district court's factual findings. And that's because, you know, based on the angle of the picture, it may affect how we perceive it. Whereas we have a district court who heard live testimony from the officer and made credibility to determine based on that and based factual findings on that. But still, even rolling down halfway, it's still, you know, combined with the fact that he has a can of spray deodorizer in the center console suggests that he is attempting to hide odors. And again, there may be other explanations for why he only rolled it down partway. That's neither here or there, nor there. As the Supreme Court has said, the relevant inquiry is not whether particular conduct is innocent or guilty. Rolling down the window partway coupled with the presence of a spray deodorizer in the center console contributes to reasonable suspicion. Okay. Going back to the timeline question, do you think the, as Judge Seymour was exploring with Mr. Ricci, does the call to dispatch make a difference in the timeline? That would have happened in this case, surely. But, you know, does it become a math question that we look at, we go through the video and see how much time he was taken to call the canine unit and then look at the call to dispatch and the time that took? Do we then, you know, make a subtraction here and that's, you know, that's how we're going to, you know, determine whether the stop here was unconstitutionally prolonged? I don't think we need to turn this into a math question. I mean, our position is that Trooper Gibbs had reasonable suspicion as soon as he got back to his car. And even if it didn't, the diesel search certainly put it over the edge and makes this case look like Contreras, which this court found was highly suspicious. And there, you know, the diesel search happened at, it was 9-19. So eight minutes after he had returned to his car, a minute after he had called into dispatch to request the records check, and then the call to dispatch, or dispatch took roughly seven, eight minutes to conduct the check-in and relay that information back to Trooper Gibbs. And so it doesn't take a lot of math to conclude that all the factors that we can consider here, including the diesel search, certainly were within the appropriate time here. Trooper Gibbs acted diligently throughout the entire encounter, you know, contacting the K-9 unit, opening the citation, and beginning to do the citation, calling into dispatch, doing, checking the diesel database. He acted diligently. Was he acting diligently when he diverted for those three minutes instead of doing some of this, some of these other things? Yes, because he had reasonable suspicion. And so calling the K-9 unit first thing to get it there as quickly as it could was acting diligently. All right, if there are, are there any other questions? Seeing none, counsel, we appreciate your argument. Mr. Arici has some rebuttal time left. There's a lot to unpack here, so let me be quick and make three quick points. The first is the diesel search adds nothing to this, even if it's considered. Right. First, it's in and of itself an impermissible investigatory detour, as Trooper Gibbs himself testified. It's what he does when he believes he has reasonable suspicion. He didn't for the dog. He didn't for the search. That only adds time that's impermissible, doesn't help the government's case. It harms it. And even if you consider the evidence he learned, it adds nothing to the reasonable suspicion calculus, because the plans were completely consistent with what he had already learned and were neither impossible nor implausible. This court has repeatedly rejected the idea that travel plans that are inconvenient or not what a trooper would do are not creditable as reasonable suspicion, and that only factor into the analysis if they are bizarre or inconsistent or make no sense. That is not what occurred here and look to Lopez for a thorough review of that. Finally, deference to training and experience of an officer, this court has repeatedly said is not unlimited, and this court repeatedly rejects issues that law enforcement has law enforcement has proffered. And finally, the lack of a rental agreement mean as nothing to the suspicion analysis because Mr. Frazier repeatedly tried to prove his authority to operate the vehicle he did not evade responsibility he gave found the number for the company and gave it. So, I'll leave it at that unless the corners for other questions and ask you to reverse. Also, thank you. We appreciate the arguments we understand your respective positions and you are excused the case will be submitted.